## Case No. 7,139.

JACKSON v. LUDELING et al.

[2 Woods, 254.] [1]

Circuit Court, D. Louisiana. April Term, 1876.

---

[1] [Reported by Hon. William B. Woods. Circuit Judge, and here reprinted by permission.]

John Ray, for defendants,

J. A. Campbell and H. M. Spofford, for complainant.

W. H. Hunt on the same side.

WOODS, Circuit Judge. There seems to have been on the part of counsel no attempt to reconcile the conflicting decisions of the supreme court of this state upon the questions at issue. I am relieved from the task of attempting to reconcile these decisions. The question, what is the jurisprudence of this state upon the points in controversy, has been before this court, and has been passed upon by it. In the case of Gaines v. New Orleans [Case No. 5,177], it was held by Mr. Circuit Justice Bradley, after a careful and laborious examination of the decisons of the supreme court of Louisiana, that under the laws of this state, possessors in bad faith are entitled to compensation for improvements which they have erected, if accepted by the owner. And in that case, the court confirmed the report of Master Weller, which charged the city of New Orleans, which had been held to be a possessor in bad faith, with the value of the rents of the property in controversy, with interest on the rents from the date of their receipt, and credited the city with the expenditures made by it for repairs, both before and after suit brought, and with interest on the cost of the repairs, thus holding that when a possessor in bad faith had enjoyed the property, receiving its profits, and had made improvements and repairs, he must account for the reasonable rent with interest, but was entitled to have his expenditures refunded with interest. In his opinion, the circuit justice said: "I have come to the conclusion that it would be equitable and just to set off the profits derived by the city from the draining machine for the past thirty-five years, against the cost of constructions and repairs, and to charge the city with the rents of the buildings and land, less the ordinary repairs of the buildings, amounting, as shown by the report, to the sum of $125,-266.79." The decree of this court just referred to was taken to the supreme court of the United States by appeal, and the case is reported in 15 Wall. [82 U. S.] 624.

From the statement of the case as made by the reporter, I take this extract (page 627): "The city, it was estimated, had received from increased taxation of other property during the term embraced by the order (including interest) $208,825. Now this particular lot of land, it was testified, was originally worth $200. The buildings erected by the city, independent of the machinery, cost $18,000. The putting up of the machinery was finished July 1, 1835 or 1836 (some witnesses testifying to one year and some to another), and it was testified that a fair rental of the land and building was $2,400 a year; the expense of repairs, $500 per annum. The master accordingly charged the city on this basis:

| | |
|---|---|
| Rental value from July 1, 1835, to November 1, 1870.......................... | $84,800 00 |
| Interest on the rents at 5 per cent... | 72,800 00 |
| | $157,600 00 |
| And allowed the city expenses of repairs.............................................$17,166 66 | |
| Interest on repairs.......................... 15,166 55 | |
| | 32,333 21 |
| And thus made the city chargeable with the difference........................ | $125,266 79" |

Mr. Justice Hunt, in delivering the opinion of the supreme court, after quoting articles 500, 501, 3414 and 3415 of the Civil Code, proceeds to say: "The case of the present defendant is an instance where the works were done by one who was sentenced to make restitution, and who was expressly adjudged to possess mala fide. Mrs. Gaines therefore had the right to keep the improvements upon reimbursing their value and the price of the workmanship, or to compel the city to demolish and remove them. In the opinion of the judge upon the circuit, he uses this language: 'Whilst the profits and advantages of the draining machine are uncertain and indefinite in amount, there is no doubt of their reality, nor, if we place any reliance upon the estimates, is there any doubt of their being amply sufficient to reimburse the city for all its expenditures, including even the rent with which it is charged.' It is evident," says the supreme court, "from this statement that there has already been allowed to the city a sum not only equal to the value of the improvements if they were demolished, but of their actual cost. The city has therefore no cause of complaint, and the point under consideration must be held against it." An examination of the report made in the case by Master Weller, and which was confirmed by the supreme court

of the United States, shows that the city of New Orleans, a possessor in bad faith, was allowed the amount expended in permanent improvements and interest thereon, and for necessary repairs and interest thereon, and was charged with the value of the rents, and interest on the same.

I shall follow in the case on trial, this decision of the supreme court of the United States so far as it is applicable. The defendants claim interest at the rate of eight per cent. per annum. No reason is shown why interest should be computed at a higher rate than five per cent. per annum, the legal rate in Louisiana, when there is no contract fixing a different rate. It appears from the report of Master Woolfley, that the gross receipts of Ludeling and his associates from the earnings of the road and the sale of lands, exceeded the amount expended by them for maintenance and repairs by the sum of $161,476.69. The complainants are entitled to be allowed this sum in their accounts with Ludeling and his associates, with interest to be calculated at five per cent. upon an average sum for an average length of time; and there should be allowed Ludeling and his associates their necessary expenses in improvements and betterments put upon and still remaining upon the road, with interest upon such expenses from the date when the expenditures were respectively made, at the rate of five per cent. per annum. Without passing, therefore, in detail, upon the exceptions of the parties to the master's report, it will be recommitted to the master, with instructions to ascertain and report to the next term of this court the amount of the necessary expenses incurred by the defendants Ludeling and his associates, in the improvements and betterments put upon said railroad, and still remaining thereon, allowing interest at the rate of five per cent. per annum on such expenses, from the date they were incurred up to the date of filing the report; and he will report what sum ought to be added for interest to the said balance of $161.476.69, the amount by which the gross receipts exceed the expenditures, for maintenance and running expenses.